# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

HOUSING SERVICES, INC.                    §
                                          §
v.                                        §    CIVIL ACTION NO. 3:20-CV-1274-S
                                          §
ALDEN TORCH FINANCIAL, LLC, et al.        §

## MEMORANDUM OPINION AND ORDER

The Court *sua sponte* reviews whether it has subject-matter jurisdiction over this civil action. For the reasons below, the Court concludes that it does not and **REMANDS** the case.

## I.    PROCEDURAL BACKGROUND

This case was removed from the 193rd Judicial District Court of Dallas County based on diversity jurisdiction. Notice of Removal of Civil Action [ECF No. 1]. It is undisputed that Plaintiff Housing Services, Inc. ("Plaintiff" or "HSI") is a Texas citizen. *Id.* ¶ 5. Although Defendants Highland Gardens, LP, Oak Hollow Housing, LP, TX Hillside Apartments, LP, and TX Bluffview Housing, LP appear to be Texas citizens based on factual allegations contained in Plaintiff's Original Petition, *id.* at 27-28, Defendants assert that complete diversity of citizenship exists because these Defendants are improperly joined, *id.* ¶ 10. While Defendants concede that TX Hillside Apartments, LP ("TX Hillside") is a Texas citizen, they assert that the remaining defendants are not Texas citizens. *Id.* Shortly after removal, Plaintiff filed a motion to remand [ECF No. 13], which the Court denied on the basis that Plaintiff's Original Petition did not state a claim against TX Hillside—the only Defendant the parties agree is a Texas citizen—and was, therefore, improperly joined. Mem. Op. and Order ("Prior Opinion") [ECF No. 47].

After obtaining leave of Court, Plaintiff filed its First Amended Complaint ("Amended Complaint"), First. Am. Compl. ("Compl.") [ECF No. 27], which Defendants did not oppose, Tr. June 22, 2020 Hr'g at 2:1-8. Defendants have since filed their respective motions to dismiss

the Amended Complaint. *See* LP Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 34]; Defendant Alden, LP's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 36]; Defendant Grand Marais, LLC's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 38]; and Defendant Alden Torch Financial, LLC's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 40]. In reviewing the Amended Complaint and the motions to dismiss, the Court recognized that the parties may not be completely diverse and, therefore, must *sua sponte* revisit its basis for subject-matter jurisdiction.

## II.    FACTUAL BACKGROUND

Plaintiff claims that it has been a co-general partner of the LP Defendants[1] since April 30, 2008. *See* Compl. ¶ 17. Plaintiff disputes the validity of subsequent changes to the general partners. *Id.* ¶¶ 6-12. According to Plaintiff, Defendant Grand Marais, LLC ("Grand Marais") filed documents with the Texas and Colorado Secretaries of State in April 2017, indicating that Grand Marais had become a co-general partner of each LP Defendant. *See id.* ¶¶ 19, 21. Plaintiff claims it did not sign or otherwise approve these documents and disputes that its consent was not required to make these changes. *Id.* ¶¶ 6-12, 22. The LP Defendants claim that Plaintiff subsequently withdrew as a co-general partner from all of the LP Defendants, LP Defs.' Br. in Supp. of Mot. to Dismiss ("LP Defs.' Mot. to Dismiss") [ECF No. 35] 1, which Plaintiff disputes. Compl. ¶¶ 6-12. The parties also dispute who the current general partners are of the LP Defendants. *Compare* Compl. ¶¶ 6-12, *with* Notice of Removal ¶ 10.

---

[1] The "LP Defendants" are: Highland Gardens, LP; Tahoe Housing, LP; Oak Hollow Housing, LP; TX Hillside Apartments, LP; TX Bluffview Housing, LP; Escondido Housing, LP; and Colorado Creekside Housing, LP. Compl. ¶ 16.

2

Prior to these disputes, Plaintiff loaned the following amounts ("Loans") to each LP Defendant on unspecified dates:

| LP Defendant | Loan Amount |
| --- | --- |
| Highland Gardens, LP | $500,000 |
| Tahoe Housing, LP | $500,000 |
| Oak Hollow Housing, LP | $450,000 |
| TX Hillside Apartments, LP | $471,916 |
| TX Bluffview Housing, LP | $500,000 |
| Escondido Housing, LP | $300,000 |
| Colorado Creekside Housing, LP | $300,000 |

Compl. ¶ 16. The Loans were evidenced by written promissory notes ("Notes") made payable to Plaintiff by each LP Defendant and were secured by a deed of trust or subordinate deed of trust ("Deeds of Trust") on real estate owned by each LP Defendant. *Id.*

Subsequent to when Grand Marais purportedly became a co-general partner of the LP Defendants, Plaintiff claims the Defendants schemed to eliminate the Loans without having to repay Plaintiff. *Id.* ¶ 24. During this time, Plaintiff states that Lee Anderson ("Anderson") was the Director of Affordable Housing of HSI. *Id.* ¶ 18. In furtherance of the scheme, Plaintiff asserts that Ryan Trane ("Trane"), an Alden Torch Financial, LLC ("Alden Torch") representative, contacted Anderson in August 2017, to discuss assigning the Notes to Alden Torch or one of its affiliated entities. *See id.* ¶ 25.

After discussing the matter with Trane, Anderson (purportedly on behalf of HSI) assigned the Notes and Deeds of Trust to Grand Marais. *Id.* ¶¶ 26, 38. Although Anderson has since passed away, Plaintiff believes Trane knowingly made misrepresentations to Anderson to induce

3

Anderson to assign the Notes and Deeds of Trust to Grand Marais so that the LP Defendants would not have to repay the Loans. *See id.* ¶¶ 24, 47-48. Specifically, Plaintiff believes that Trane told Anderson that any funds Plaintiff received from the LP Defendants under the Notes would have to be repaid to the City of Dallas. *Id.* ¶ 47. Plaintiff alleges that this representation was false, Trane knew it was false, and Anderson was fraudulently induced to assign the Notes on the basis of Trane's misrepresentation. *Id.* Importantly, Plaintiff asserts that Anderson lacked corporate authority to execute the assignments on behalf of HSI. *Id.* ¶ 55.

In support, Plaintiff attaches a sworn affidavit from James R. Fisher II ("Fisher"), who Plaintiff claims was assisting Anderson with compliance during this time frame and has knowledge about the factual circumstances at issue. *Id.* ¶¶ 27-28. Fisher states in his affidavit, among other things, that he saw email correspondence between the Alden Torch representative and Anderson that supports Plaintiff's assertions, as indicated by the following excerpt from Fisher's affidavit:

> The Alden Torch representative stated in the email that any funds that HSI received from the debtors on these notes would have to be repaid to the City of Dallas. I believe, in hindsight, Alden Torch actually meant to say that the money would have to be turned over to the Federal Home Loan Bank of Dallas ("FHLB"). Regardless the net affect represented to HSI and Lee Anderson was the notes would never generate any net cash for the 501 C 3 non-profit. That e-mail is false and misled [HSI] as to the value and liquidity of the notes and mortgages. Lee Anderson relied on that written representation to my knowledge and understanding based upon my discussions with Lee Anderson in the ordinary course of our business relationship at that time.

*Id.* ¶ 28.

After Anderson assigned the Notes, Plaintiff claims the LP Defendants sold the real estate that secured the Loans. *Id.* ¶ 43. As a result of the alleged scheme, Plaintiff claims it never received repayment of the Loans from the LP Defendants or any other entity, and did not receive any proceeds from the sale of real estate that secured the Loans. *See id.* ¶¶ 50-51. Plaintiff maintains that all of the Defendants are affiliated and benefitted from the alleged fraud because as

4

a result of the scheme, the money the LP Defendants owed to HSI was kept within the "Alden family of companies." *Id.* ¶¶ 2, 44-45, 51-52; Resp. to Alden Mot. to Dismiss [ECF No. 48] ¶ 38.

Based on the foregoing allegations, Plaintiff alleges damages in excess of $3,000,000 and brings the following claims: (1) common law fraud; (2) conspiracy to commit fraud; and (3) unjust enrichment.  Compl. ¶¶ 45-53, 56.  Plaintiff also alleges that the Note and Deed of Trust assignments are invalid and unenforceable because: (1) Plaintiff did not receive consideration for the assignments; and (2) Anderson did not have authority to bind Plaintiff to the assignments. *Id.* ¶¶ 54-55.  Accordingly, in addition to seeking monetary relief, Plaintiff seeks a declaratory judgment that, among other things, the Note and Deed of Trust assignments to Grand Marais are void, invalid, and unenforceable.  *Id.* ¶¶ 57-59.  Defendants move to dismiss Plaintiff's claims principally on the grounds that Plaintiff fails to state a claim under Rule 12(b)(6) and fails to meet Rule 9(b)'s heightened pleading standard for fraud.

## III.  LEGAL STANDARD

A civil action brought in state court may be removed to the district court where such action is pending if the district court has original jurisdiction.  28 U.S.C. § 1441(a).  The removing party bears the burden to show that federal jurisdiction is proper.  *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009) (citation omitted).  All contested factual issues and state-law ambiguities are resolved in plaintiff's favor.  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citation omitted).  Because removal raises significant federalism concerns, removal is strictly construed and any doubt about the propriety of removal jurisdiction is resolved in favor of remand.  *See id.* at 281-82 (citations omitted).  The two principal bases upon which a district court may exercise removal jurisdiction are: (1) the existence of a federal question, *see* 28 U.S.C. § 1331; and (2) complete diversity of citizenship among the parties, *see* 28 U.S.C.

5

§ 1332. *Hutchins Warehouse Ltd. Partners v. Am. Auto. Ins. Co.*, Civil Action No. 3:16-cv-3336-G, 2017 WL 2691315, at \*1 (N.D. Tex. June 22, 2017).

If a defendant has the same citizenship as the plaintiff, a federal court can exercise removal jurisdiction over the action if it finds that the plaintiff improperly joined the non-diverse defendant. *Id.* "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). There are two ways to establish improper (or fraudulent) joinder: (1) actual fraud in the pleading of jurisdictional facts; or (2) inability of plaintiff to establish a cause of action against the non-diverse party in state court. *Id.* at 573 (citation omitted). In making this inquiry, the court conducts a Rule 12(b)(6)-type analysis to determine whether there is no reasonable basis for the court to predict that a plaintiff may recover against the non-diverse defendant. *Id.* at 573. A court need only decide whether there is a reasonable basis that a plaintiff can recover against a non-diverse defendant on any one of its claims, not all of them. *Malone v. Blue Cross & Blue Shield of Tex., Inc.*, Civil Action No. 3:18-cv-2757-K, 2019 WL 4192286, at \*2 (N.D. Tex. Sept. 3, 2019) (citing *Smith-Manning v. State Farm Lloyds*, Civ. Action No. 3:13-cv-3056-M, 2013 WL 5637539, at \*2 (N.D. Tex. Oct. 14, 2013)). This analysis does not focus on the legal merits of the case. *Smallwood*, 385 F.3d at 576.

The fraudulent joinder doctrine, however, does not apply to joinders that occur after removal. *Cobb v. Delta Export, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Id.* (quoting 28 U.S.C. § 1447(e)).

6

## IV. ANALYSIS

### A. *Sua Sponte Consideration of Subject-Matter Jurisdiction*

A court must raise the issue of subject-matter jurisdiction *sua sponte* at any time during the course of litigation if it appears that subject-matter jurisdiction is lacking. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (objection to a federal district court's subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment"); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."); *United States v. Pipkin*, 832 F. App'x 345, 346 (5th Cir. 2020) (per curiam) ("We must examine the basis of our jurisdiction, sua sponte, if necessary.") (citing *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987)); *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (noting that federal courts are duty-bound to examine the basis for subject-matter jurisdiction *sua sponte*, even on appeal) (citing, among other authorities, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings.") (citation omitted). "If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005).

The Fifth Circuit has indicated that removal jurisdiction is determined on the basis of claims asserted in the state-court petition existing at the time of removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). In *Cavallini*, the Fifth Circuit upheld the district court's decision not to consider a proposed amended complaint when ruling on a motion to remand. *Id.* at 264-65. At the time the district court ruled on the motion to remand, the live pleading was the plaintiff's state-court petition because the district court had not granted plaintiff

leave to file an amended complaint. *Id.* 258-59. Since *Cavallini*, courts in this Circuit have considered whether an amended complaint can rehabilitate a previously deficient claim against a non-diverse party who was present in the state-court petition. *See, e.g.*, *LC Farms, Inc. v. McGuffee*, Civil Action No. 2:12-cv-165-SA-JMV, 2012 WL 5879433, \*2 (N.D. Miss. Nov. 21, 2012).

Multiple courts in this Circuit have *sua sponte* raised the issue of subject-matter jurisdiction after finding that an amended complaint states a claim against a non-diverse defendant, even after previously finding that the same non-diverse defendant was improperly joined. *Petree v. Metro. Lloyds Ins. Co. of Tex.*, Civil Action No. 3:16-cv-0735-G, 2016 WL 4211764, at \*2-3 (N.D. Tex. Aug. 9, 2016) (remanding action *sua sponte* after previously denying plaintiffs' motion to remand because amended complaint stated potential claim against a pre-existing, non-diverse defendant); *Hutchins Warehouse Ltd. Partners*, 2017 WL 2691315, at \*1-3 (same); *Mills Grp. Ltd. v. Oceanografia, S.A. de C.V.*, Civil Action No. H-08-3449, 2009 WL 3756931, at \*2 (S.D. Tex. Nov. 6, 2009) (same); *see also Malone*, 2019 WL 4192286, at \*1 (granting plaintiff's renewed motion to remand on the basis that amended complaint, which was filed as a matter of course, stated a claim against non-diverse defendants); *Arrington v. Jackson Life Ins. Co.*, Civil Action No. 3:17-cv-0472-S, 2018 WL 5298388, at \*1-5 (N.D. Tex. Oct. 25, 2018) (applying *Hensgens* factors to plaintiff's request to join a pre-existing, previously dismissed defendant and new defendant, finding that amended complaint stated a claim against both defendants, and remanding).

In at least one case where, like here, the plaintiff received permission to amend its complaint, the court remanded after finding that the amended complaint potentially stated a claim against a previously dismissed, non-diverse defendant. *Caruth v. Chubb Lloyd's Ins. Co. of Tex.*, 3:17-CV-2748-G, 2018 WL 3934030, at \*1-4 (N.D. Tex. Aug. 16, 2018) (noting that plaintiff filed

an amended complaint after leave of court and remanding after finding that amended complaint potentially stated a claim against a previously dismissed, non-diverse defendant); *see also Haisley v. Reeder*, Civil Action No. 19-9224, 2021 WL 62399, *1-3 (E.D. La. Jan. 7, 2021) (remanding after granting plaintiff's motion to amend complaint, which was unopposed by defendants, and finding that amended complaint stated additional claims against pre-existing defendant who had previously settled).

## B. *Citizenship of LP Defendants*

In its Original Petition, Plaintiff states that it is a co-general partner of Highland Gardens, LP, Oak Hollow Housing, LP, TX Hillside, and TX Bluffview Housing, LP. Notice of Removal 27-28. In the Amended Complaint, Plaintiff clarifies that it has been the co-general partner of all the LP Defendants since April 30, 2008, and disputes the validity of any subsequent withdrawal. *See* Compl. ¶¶ 17, 59. If Plaintiff is still a co-general partner, the LP Defendants would be Texas citizens because the citizenship of a limited partnership is determined by the citizenship of its partners, and Plaintiff is a Texas citizen. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) ("The citizenship of a limited partnership is based on the citizenship of each of its partners.") (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, (1990)). Defendants, however, aver that the LP Defendants (with the exception of TX Hillside) are not Texas citizens because Plaintiff withdrew as a co-general partner and the current partners are not Texas citizens. Notice of Removal ¶ 10; LP Defs.' Mot. to Dismiss 1. In support of this assertion, Defendants refer to limited partnership agreement amendments, which purport to demonstrate that Plaintiff withdrew as a co-general partner. *Id.* at 6 n.4. The amendments are signed by Anderson (allegedly on behalf of HSI). App. to Defs.' Sur-Reply to Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. to Remand [ECF No. 33], Ex. A-4.

9

The issue here is that Plaintiff asserts that Anderson was not authorized to act on behalf of Plaintiff. *See* Compl. ¶ 55 ("Lee Anderson was never an officer [of] HSI. He was never on the HSI Board of Directors. For this reason, he did not have the authority to execute the assignments of the notes and deeds of trust on behalf of HSI, and he was not authorized to bind HSI to these assignments. The HSI Board never gave Mr. Anderson the authority to execute the assignments, and the HSI Board never approved the assignments. No officer of HSI ever gave Anderson the authority to execute the assignments and no officer ever approved the assignments."); *see also id.* ¶¶ 42, 59. Thus, it is unclear whether any of the documents signed by Anderson bind Plaintiff.

In response, Defendants insist that Anderson was authorized because he allegedly acted on behalf of Plaintiff for many years[2] and signed IRS Form 990 stating that he was a principal officer and executive director of HSI. Def. Grand Marais's & the LP Defs.' Br. in Supp. of their Mots. to Dismiss [ECF No. 52] ¶¶ 18-19. In support, the LP Defendants cite an IRS webpage stating that: "Some members of the public rely on Form 990 or Form 990-EZ as their primary or sole source of information about a particular organization." *Id.* at 19. This proposition is of questionable legal weight, and Defendants have not cited any statutory or case law authority—nor is the Court aware of the existence of such authority—indicating that statements made on Form 990 definitively prove an individual's authority to transact on a corporation's behalf, particularly with respect to transactions that are unrelated to IRS filings.

According to Article 6 of Plaintiff's Restated Certificate of Formation filed with the Texas Secretary of State ("Articles"), "the board of directors shall govern and manage the affairs of the corporation." Compl., Ex. 29. Article 6 further states that "[t]he board of directors may vest

---

[2] Although this statement possibly alludes to the concept of apparent authority, Defendants have not briefed apparent authority, and it would be inappropriate to address apparent authority considering the incomplete record before the Court.

10

management responsibility for selected matters in committees, officers, offices, and employees of the corporation, as deemed appropriate from time to time." *Id.* The Articles do not indicate that Anderson was an officer, member of the board of directors, or authorized representative. *Id.* Nor have the parties submitted (or alleged the existence of) corporate documentation demonstrating that the board of directors authorized Anderson to act on behalf of HSI (e.g., bylaws, written resolutions of the board of directors, or corporate minutes). Without proper corporate documentation demonstrating that Anderson was duly authorized by the board of directors to act on behalf of Plaintiff (and given Plaintiff's assertion that Anderson was *not* so authorized), the Court cannot determine at this stage of the litigation whether Plaintiff properly withdrew as a co-general partner of the LP Defendants. Therefore, the Court resolves these contested issues of material fact in Plaintiff's favor.[3]

## C. *Common Law Fraud*

In its Response to the LP Defendants' motion to dismiss, Plaintiff clarifies that it alleges a fraud claim solely against Alden Torch.[4] Resp. to LP Defs.' Mot. to Dismiss [ECF No. 50] ¶ 1. With respect to whether the Amended Complaint states a potential conspiracy to commit fraud claim against the LP Defendants, the Court first considers whether the Amended Complaint states a potential fraud claim because conspiracy to commit fraud is derivative of fraud. In Texas, the elements of common law fraud are: "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was

---

[3] Even if the LP Defendants (except TX Hillside) are not Texas citizens, the result of this Opinion would not change because TX Hillside is undisputedly a Texas citizen.

[4] The parties do not dispute that Texas law applies to Plaintiff's claims and cite primarily to Texas law. When parties fail to raise choice-of-law issues, the Court need not raise the issue *sua sponte* and the parties are deemed to have acquiesced to the law of the forum. *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, No. Civ. SA03CA305FB, 2005 WL 2708811, at *6 (W.D. Tex. June 3, 2005) (citation omitted), *report and recommendation adopted*, 2005 WL 8156326 (W.D. Tex. Sept. 28, 2005).

11

intended to be acted upon, which was relied upon, and which caused injury."[5] *Zorilla v. Aypco Constr. II, LLC*, 469 S.W. 3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998)) (internal quotation marks omitted). Taking Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged sufficient facts to state a fraud claim against Alden Torch.

## D. *Conspiracy to Commit Fraud*

Plaintiff alleges conspiracy to commit fraud against all Defendants. Pl.'s Resp. to Alden Torch & Alden Mots. to Dismiss ¶ 38. Under Texas law, the elements of conspiracy are: (1) two or more persons; (2) an object to be accomplished (in this case fraud); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Operation Rescue-Nat'l v. Planned Parenthood of Hous. and Se. Tex.*, 975 S.W.2d 546, 553 (Tex. 1998); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Because conspiracy to commit fraud is a derivative claim of fraud, a conspiracy claim cannot survive in the absence of a valid underlying fraud claim. *See, e.g.*, *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 414 (5th Cir. 2007) (citation omitted). A co-conspirator's liability does not depend on whether it committed the underlying fraud. *See United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 209 (5th Cir. 2020) ("Under Texas law,

---

[5] The parties dispute whether justifiable reliance is an element of fraud. Texas courts have made it clear that justifiable reliance is, in fact, a required element. *See, e.g.*, *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). However, justifiable reliance is generally a question of fact. *Id.* at 497 (citation omitted); *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2007) (citation omitted). For that reason, it is generally more appropriate to decide justifiable reliance after the factual record has been developed. *See Cho v. Wells Fargo Bank, N.A.*, Civil Action No. 4:16-CV-00256-ALM-CAN, 2017 WL 989303, *6 (E.D. Tex. Feb. 17, 2017) (citing, among other authorities, *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 330 (5th Cir. 2013)). Based on the incomplete and underdeveloped factual record, the Court finds that it is inappropriate to determine justifiable reliance at this early stage.

'a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff *seeks to hold* at least one of the named defendants liable.'") (citation omitted) (emphasis in original). Taking Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged sufficient facts to state a conspiracy claim against the LP Defendants.

The Court need not consider Plaintiff's remaining claims because the Court has found that the Amended Complaint states at least one viable claim against a non-diverse defendant. *Malone*, 2019 WL 4192286, at \*2 (citing *Smith-Manning*, 2013 WL 5637539, at \*2). Therefore, there is not complete diversity of the parties as required by 28 U.S.C. § 1332.

## E. *Joinder*

Given that the Court previously found that TX Hillside was improperly joined (which was tantamount to dismissing Plaintiff's claims against TX Hillside without prejudice, *see Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016)), the Court construes Plaintiff's Amended Complaint as a motion to join TX Hillside. *See Thomas v. Exxon Mobil Corp.*, Civil Action No. 16-15750, 2017 WL 3235444, at \* 2 (E.D. La. July 31, 2017) (treating motion to amend as motion to add defendant after earlier finding of fraudulent joinder and analyzing amendment under 28 U.S.C. 1447(e)); *Bonilla v. America's Servicing Co.*, Civil Action No. H–12–0409, 2012 WL 1552029, at \*1 (S.D. Tex. Apr. 30, 2012) (noting court previously construed amended complaint as motion to amend to join non-diverse defendant). Although not addressed previously, the Court finds that the remaining LP Defendants were also improperly joined under the Original Petition for the same reasons explained in the Prior Opinion with respect to TX Hillside. Prior Op. 4-5. Thus, the Court also construes Plaintiff's Amended Complaint as a motion to join the remaining LP Defendants.

13

In determining whether to permit or deny joinder, courts in the Fifth Circuit balance four non-exclusive factors. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The enumerated factors are: "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* If the court, upon balancing the equities, permits joinder of a non-diverse defendant, it must remand to state court. *Id.* If it does not permit joinder, the federal court retains jurisdiction. *Id.*

The first factor weighs in favor of joinder because the LP Defendants were included as defendants in the Original Petition and the Court finds that Plaintiff may have a valid cause of action against the LP Defendants. *Arrington*, 2018 WL 5298388, at *3 (citations omitted). The second factor also weighs in favor of joinder because Plaintiff was not dilatory in seeking amendment. *See* Elec. Or. [ECF No. 26] (noting Plaintiff sought leave to amend on June 22, 2020—just over one month after the removal date). The third factor also weighs in favor of joinder because denial of joinder would force Plaintiff to pursue its claims against the LP Defendants in parallel state proceedings, leading to judicial inefficiency and the possibility of conflicting outcomes. *Arrington*, 2018 WL 5298388, at *4 (citations omitted). The fourth factor is neutral because granting joinder would deprive Defendants of a federal forum, but that factor is likely present in every case in which a plaintiff seeks to add a non-diverse defendant. *Id.* at *5 (citations omitted). After balancing the *Hensgens* factors, the Court finds they cumulatively favor joinder. Therefore, the Court shall allow the joinder of the LP Defendants. As a result, the Court is divested

of its subject-matter jurisdiction, and the case must be remanded back to the court from which it came.[6] 28 U.S.C. § 1447(e).

## V.    CONCLUSION

For the reasons discussed above, LP Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 34]; Defendant Alden, LP's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 36]; Defendant Grand Marais, LLC's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 38]; and Defendant Alden Torch Financial, LLC's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) [ECF No. 40] are **DENIED** as moot, and this case is **REMANDED** to the 193rd Judicial District Court of Dallas County, Texas, for further proceedings.

**SO ORDERED.**

SIGNED January 31, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

---

[6] A court in this Circuit recently addressed a factual situation similar to the one confronting this Court. *Haisley*, 2021 WL 62399. In *Haisley*, a diverse defendant removed and asserted that the court had diversity jurisdiction, despite the presence of a non-diverse defendant, because the non-diverse defendant had settled and, therefore, was improperly joined. *Id.* at *1. Plaintiff subsequently filed a motion to amend his complaint, to which defendants did not object, and the court granted the motion. *Id.* The amended complaint stated new claims against the non-diverse defendant and the court remanded. *Id.* at *1-4. The court explained that the fraudulent joinder doctrine did not apply post-removal. *Id.* at *3. In explaining its ruling, the court stated that the court lost subject-matter jurisdiction once it granted the amendment (effectively allowing plaintiff to join new claims against the non-diverse defendant), and that the non-diverse defendant must contest post-removal joinder before the court allows amendment of the complaint. *See id.* Here, like in *Haisley*, Defendants stated they had "no objection" when Plaintiff requested leave to file the Amended Complaint. Tr. June 22, 2020 Hr'g at 2:1-8. Thus, in the alternative, the Court finds that it lost subject-matter jurisdiction when the Plaintiff filed the Amended Complaint, and remand is required. *See* 28 U.S.C. § 1447(e).

15